## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

------------------------------------------------------x

**NICOLE TOSI,**

                Plaintiff,                  **JURY TRIAL DEMANDED**

        v.                          Case No. 1:22-cv-4162

**WILLIAMS-SONOMA, INC.,**

                Defendant

------------------------------------------------------x

### PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Nicole Tosi, by and through undersigned counsel, hereby complains against Defendant Williams-Sonoma, Inc. ("WSI") as follows:

### INTRODUCTION

1. This case arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-502(a) *et seq.*; the Federal Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"); the New York Labor Law ("NYLL"), Article 6; and the common law.

2. This case challenges the Defendant's willful, knowing, and/or reckless violations of Title VII and the NYCHRL, including gender-based discrimination, sexual harassment (hostile work environment and quid pro quo), age discrimination

1

in violation of the ADEA and NYCHRL, retaliation, and wage and hour violations. This case also challenges Defendant's willful FMLA retaliation and breach of contract under the common law.

## JURISDICTION, PARTIES, AND VENUE

3.      Plaintiff Nicole Tosi ("Plaintiff" or "Tosi") is a United States citizen residing in the Town of Milford and State of New Hampshire.

4.      Defendant Williams-Sonoma, Inc. ("WSI") is a Delaware corporation headquartered in San Francisco, California with offices in New York.

5.      At all times herein relevant, Plaintiff was an employee of WSI, which was an employer within the meaning of Title VII and the NYCHRL.

6.      At all times herein relevant, WSI employed more than 500 individuals.

7.      Jurisdiction and venue are proper in this Court because Plaintiff was Brooklyn-based employee of WSI.

8.      Plaintiff filed a timely Charge of Discrimination against WSI with the New York State Division of Human Rights ("NYSDHR") on or about January 12, 2021, alleging sex-based discrimination, sexual harassment, retaliation, and age discrimination.

9.      New York is a deferral state and Plaintiff requested that her Charge of Discrimination be dual filed with the EEOC.

10.     Per Executive Orders 202.8 and 202.67 of the Governor of the State of New York, the statute of limitations for Plaintiff's claims was tolled from March 20, 2020 to November 3, 2020 due to the COVID-19 pandemic.

11.    On or about April 4, 2022, the NYSDHR issued an administrative dismissal and annulment of Plaintiff's claims so she could pursue her remedies in Court.

12.    Under the NYCHRL Chapter 5, § 8-502(b), where a complaint filed with the NYSDHR is dismissed pursuant to subdivision 297.9 for administrative convenience or on the grounds that such person's election of administrative remedies is annulled, an aggrieved person shall maintain all rights to commence a civil action pursuant to Chapter 5 as if no such complaint had been filed.

13.    Under the NYCHRL Chapter 5, § 8-502(d), a civil action must be commenced within three years after the alleged unlawful discrimination practice or act of discriminatory harassment occurred. Upon the filing and during the pendency of a complaint with the NYSDHR, the three-year limitations period shall be tolled.

## BACKGROUND FACTS

14.    Plaintiff Nicole Tosi ("Tosi") is a 51-year-old female with decades of experience in the retail/interior design industry.

15.    In 2014, Tosi began working for Williams-Sonoma, Inc. ("WSI") as a sales executive. Her title was "Contract Account Executive" for the Northeast territory that included Eastern Canada.

16.    Tosi worked in the Rejuvenation/Trade Contract division of WSI, which was also known as the business-to-business (B2B) division that focused on selling furnishings to hotels and other large commercial accounts. Her starting salary was

$75,000.00 annually, plus commissions that were earned pursuant to yearly sales compensation plans, contracts, and/or employment agreements.

17.     Tosi accepted the job at WSI for a yearly base salary that was less than what she was earning in 2014, because WSI specifically promised Tosi growth opportunities.

18.     WSI is a global brand of retail consumer products that includes home furnishings, retail stores, individual and corporate design services, and more. Brands like Pottery Barn and West Elm are included under the WSI umbrella.

19.     WSI has more than 20,000 employees worldwide.

20.     Even though Tosi resided in New Hampshire, she worked out of the Brooklyn, NY office.

21.     Tosi's job duties included meeting with designers, purchasing agents, hotel brands, and architects, and selling WSI products to customers within her Northeast territory.

22.     Tosi performed her job duties satisfactorily the entire time she worked for WSI. Tosi's year over year double digit growth is evidence of her strong performance.

23.     Throughout Tosi's employment, WSI had an ongoing pattern of withholding bonus/commission payments under various yearly sales plans and/or employment agreements. WSI intentionally made it difficult to track sales goal information and obfuscated numbers to distract employees from the fact that they were not being paid bonuses that had been earned through their hard work. When

Tosi complained about not being paid for a bonus earned, WSI retaliated against her. Tosi had to fight for nearly every bonus she received at WSI.

24.     Tosi knew that her sales numbers and job performance were both strong, but when she would ask about bonuses WSI simply claimed she did not make her numbers.

25.     From the beginning of her employment, Tosi began keeping track of her own sales numbers and compared these numbers to her goal.

26.     WSI changed sales goals arbitrarily when pressed about paying employee bonuses.

27.     In April 2015, when Tosi asked for more information about her sales numbers, WSI provided a report showing she had far surpassed the goal of $850,000 in sales. Therefore, Tosi complained to HR Manager Christine Struckman about not being paid a bonus despite meeting her sales number.

28.      Year after year, WSI continued to illegally withhold information about sales numbers and incorrectly attributed Tosi's sales to other territories. Tosi was underpaid bonuses that were owed to her pursuant to yearly incentive/sales plans offered by WSI.

29.     In April of 2016, Tosi reported to WSI Sales Director Jerry Huettmann ("Huettmann"). As WSI prepared for an upcoming trade show in Las Vegas, Huettmann sent an offensive "dress code" email to Tosi and her female colleagues, demanding that they wear "red lipstick" at the trade show. Tosi found this email to be outrageous and sexist.

30.    In May of 2016, Tosi attended the trade show referenced above. Huettmann required the Trade/Contract Account Executive team to wear red lipstick and high heels in the WSI trade show booth. Huettmann went so far as to purchase red lipstick for Tosi to wear and sent it to her home. Two of Tosi's female colleagues had to go out and buy red lipstick because they did not own any. One of these female colleagues refused to wear red lipstick or high heels. WSI then retaliated against the colleague and failed to promote her, causing the colleague to quit her job.

31.    At the May 2016 trade show, Tosi wore the red lipstick even though she found it humiliating and totally out of character for her. Tosi tried to wear the high heels that Huettmann demanded, but they were incredibly uncomfortable, especially while standing on her feet all day.

32.    When Tosi changed out of the high heels and put more comfortable shoes on at the trade show, Huettmann berated her in front of WSI colleagues. He screamed at Tosi to put the heels back on. She felt humiliated and belittled, like she was just a sex object instead of a sales executive.

33.    In May of 2016, at the Las Vegas trade show, Tosi reached out to the Senior VP and General Manager of WSI's Rejuvenation division, Alex Bellos ("Bellos"), to discuss her concerns about Huettmann as well as her future with the company.

34.    In June of 2016, after Tosi complained about commissions not being properly reported and/or not being paid commission under her sales contract, compensation, and/or employment agreement, Huettmann claimed that WSI had

decided not to review previous sales numbers for 2015 and early 2016 to see if the team was owed more money.

35.     In July of 2016, Huettmann recruited a friend and former colleague named Angela King ("King") to come work for WSI. King previously worked for WSI's biggest competitor, Restoration Hardware. Thereafter, Huettmann and King were placed on leave for several months because WSI got sued by Restoration Hardware after Huettmann and King shared proprietary information.

36.     Given the situation with Huettmann, Tosi reached out to Alex Bellos ("Bellos"), the President of Rejuvenation, and let him know she was interested in filling the East Coast Sales Director position. Bellos responded via email that he was "looking forward to establishing more regular touch points between" him and the team. Bellos also noted there was a "lot of opportunity coming up." He said that an East Coast Sales Director position was not open at the time, but "if and when" such a position opened up, "I'll of course be reviewing with you first!" Huettmann returned to work at WSI in September 2016.

37.     When Huettmann learned that Tosi had spoken with Bellos in May of 2016 about sales territory issues, he reprimanded her by sending an email to the entire team, accusing them of making "noise" that reflected poorly on him. Huettmann told Tosi, "Do not reach out to Alex any longer with your territory concerns." By "territory concerns," Huettmann was referring to Tosi's protected whistleblowing regarding the sales that she had made, which had been credited to the wrong territory and deprived her of bonus compensation.

38.     One of Tosi's colleagues went to HR and complained about the sexually harassing way that Tosi was treated at the Trade Show. HR reached out to Tosi to confirm what had happened. During this time, WSI gave credit for more than 200 of Tosi's sales to the Atlanta store. When she complained about unfair pay practices to Christine Struckman ("Struckman") in HR, WSI took adverse action that negatively impacted Tosi's compensation.

39.     In February of 2017, WSI assigned Tosi's team a new HR representative, Rosemary Giacomelli ("Giacomelli"). Along with two of Tosi's Rejuvenation Account Executive colleagues, Tosi requested a meeting with Giacomelli to discuss Huettmann's aggressive, intimidating behavior toward them.

40.     Giacomelli scheduled a meeting with Tosi and two of her colleagues at the end of February when they would be visiting the corporate office in San Francisco. She also contacted Tosi by phone and asked if Tosi had been required to wear red lipstick and high heels at a trade show in May of 2016. Tosi told Giacomelli yes and explained that Huettmann had humiliated and belittled her and other females at the trade show. Giacomelli asked why Tosi had not reported his actions to HR sooner. Tosi said she feared retaliation and did not want to lose her job. Giacomelli assured Tosi that no retaliation would occur if she discussed the situation with HR.

41.     Tosi then sent Giacomelli several emails citing instances where Tosi felt she had been retaliated against or criticized after raising concerns with HR or her direct supervisor.

42.     During the Trade/Contract Account Executive team meeting in San Francisco that month, WSI announced integration of teams and realignment of sales territories. WSI said there would now be a Sales Director for the Western US, Ben Heilig, in addition to Huettmann as the Sales Director for the Eastern US.

43.     Because Tosi had reported Huettmann's sexually harassing behavior at the trade show, Giacomelli recommended that Tosi begin reporting to Ben Heilig, the new Western US Sales Director ("Heilig"), instead. Tosi told Giacomelli once again that she feared retaliation for switching teams and speaking out against Heuttmann. Once again, Giacomelli assured Tosi that no retaliation would occur.

44.     However, in March of 2017, WSI fired Heilig. Tosi had to continue reporting to Huettmann.

45.     In June of 2017, Huettmann's boss (Vicki) asked Tosi questions about some of the issues Tosi had with him. Tosi answered Vicki's questions honestly and told her that Huettmann did not meet with her regularly and he was not accessible to Tosi as a manager. Vicki said that Huettmann should not be managing employees and Tosi agreed.

46.     Shortly thereafter, HR representative Giacomelli left WSI. One of Tosi's colleagues who was also involved in HR's investigation of unfair pay practices and sexual harassment at the Trade Show, Nancy Holloway, left the company as well.

47.     In July of 2017, WSI restructured the sales territories for Tosi's team. Tosi was told that her territory was being reduced because it was not proportionate with the other territories in size and dollar volume compared to her peers.

48. Tosi went from having a $38 million territory to a $13 million territory. Even though there were four open territories without Sales/Account Executives, WSI removed Tosi from the New York and New Jersey territories—her biggest and most lucrative territories. WSI replaced these locations with Eastern Canada. The company claimed that this was an even trade. However, seven of the WSI brands (all but Rejuvenation) could not ship products to Eastern Canada.

49. The change in territory resulted in Tosi's overall sales being significantly limited compared to her peers, whose territories ranged from $18 million to $25 million.

50. WSI's reduction in Tosi's territories in July of 2017 was direct retaliation against her for complaining of sexual harassment and unfair pay practices.

51. In the fall of 2017, Tosi tried to discuss some of these issues with the new HR representative for her team, Courtney Boxell ("Boxell"). However, Boxell largely ignored Tosi's concerns and failed to respond to her emails in October of 2017.

52. In April of 2018, Tosi received the lowest performance review in four years, even though she made her sales goal.

53. This unfavorable performance review amounted to pretext and retaliation for Tosi's complaints about unpaid wages, her reduced sales territory, and/or sexual harassment.

54. Huettmann and VP of Trade/Contract Josie Driscoll ("Driscoll") added Michigan to Tosi's sales territory in order to increase her sales, but this still resulted in less than half of the sales volume compared to her peers.

55.     At all times herein relevant, Driscoll worked out of the Brooklyn, NY office of WSI and all discrimination and retaliatory practices alleged herein occurred in New York, regardless of where Tosi was located or what territory she covered.

56.     In August of 2018, Tosi received an email from the new HR Manager requesting to set up a call to discuss feedback on strengths, opportunities, and solutions for improvement for her team. HR's inquiry was likely in response to the account executive team, including Tosi, reporting that Huettmann was very passive aggressive, and he managed by intimidation.

57.     On August 29, 2018, Tosi spoke with yet another new HR representative named Terri Charron ("Charron"). Tosi explicitly told Charron that she was reluctant to speak with HR about any complaints because the last time Tosi had done so, her territory was significantly reduced, and she received a negative performance review.

58.     Charron claimed that she did not know about Tosi's history with the company. Tosi asked her to review the HR file, because working conditions had gotten dramatically worse since Tosi complained to HR. Tosi told Charron about hostile and intimidating behavior that both Huettmann and Driscoll subjected her to.

59.     Tosi did not receive a response from HR regarding this call and neither did her peers. HR reported back to Driscoll, the VP of Trade/Contract, that these calls with account executives like Tosi were favorable and positive, which was not true.

60.     In October of 2018, Tosi's team received an email from the Senior Director with a subject line that read: "Climate Survey Follow Up." The email included an "action plan" regarding the constructive feedback the team had provided,

but again WSI ignored Tosi's complaints of intimidating, unprofessional management.

61.     On October 9, 2018, during a weekly B2B sales meeting conference call, Driscoll (who had recently been promoted to West Elm VP) spoke to Tosi's colleague Patrece Julian in an incredibly offensive, inappropriate manner. Tosi and her team all thought the interaction was horrible and retaliatory. Notwithstanding this behavior, WSI promoted Driscoll yet again to the VP of all WSI brands on October 30th. Patrece Julian ended up quitting in December of 2018 because of the horrible bullying.

62.     In December of 2018, WSI asked Tosi to temporarily assume the role of acting account executive for the Southeast territory being vacated by her colleague Patrece, in addition to the Northeast territory that Tosi already worked in. WSI adjusted Tosi's base salary from $112,000 to $135,000.

63.     In March of 2019, during a corporate meeting in Portland, Oregon at the Rejuvenation corporate office, Tosi once again brought up the fact that the team's sales numbers were not being tracked properly. By this time, WSI was using Salesforce, but sales were still not being allocated or tracked correctly.

64.     Driscoll asked Tosi to explain the issue in front of her colleagues. Tosi specifically walked Driscoll through the issue with Salesforce and showed it to her on the computer. The problem was very clear and substantiated by the entire team as well as the East Coast Sales Director (Huettmann) and Operations Manager in charge of Salesforce at the time, Alicia Reitzel.

65.     In response to Tosi pointing these issues out, Driscoll screamed at and humiliated her in front of colleagues. Driscoll told Tosi she did not want to hear about the Salesforce issue again in a threatening manner, followed by: "Do you hear me? Do I make myself clear?"

66.     After Driscoll screamed at Tosi during the meeting, even Huettmann (who was also present) acknowledged that Driscoll's behavior was aggressive, threatening, and retaliatory. Huettmann apologized to Tosi and said that Driscoll's behavior had violated WSI's Code of Conduct.

67.     In April of 2019, WSI informed Tosi that she would receive the largest percentage increase in salary and bonus payout on the Account Executive team that year, and that she was being considered for a new Sales Director position with the company because of the great job Tosi was doing.

68.     On or about April 18, 2019, Tosi received a call from Driscoll stating that East Coast Sales Director Jerry Huettmann would be leaving the company in two weeks. Driscoll said that the team needed a more hands-on leader to be successful and there would be two new Director positions, one for the Eastern US and one for the Western US.

69.     Driscoll said that the Eastern US Sales Director position had already been filled. Tosi later learned the position was only posted for five days and posted prior to Huettmann giving his notice. WSI never gave Tosi the opportunity to apply or interview for this position.

70.     Driscoll said that she was "still committed" to Tosi's career development and claimed to be working on "developing" a senior executive role for her.

71.     WSI hired a younger, less experienced male candidate for the Eastern US Sales Director position described above.

72.     On April 19, 2019, Tosi received a call from Christine Struckman in HR asking if she had been told the new Eastern US Sales Director position would be offered to her. Tosi said that she had been promised consideration as a candidate for the position. Tosi asked Struckman why she was not given the chance to apply or be considered for the position, but Struckman did not answer Tosi.

73.     Tosi complained to HR about being passed over for the Eastern US Sales Director position.

74.     Tosi had a follow up call with HR, during which she specifically told Struckman that WSI had retaliated against her not only by denying Tosi a promotion, but also because Driscoll screamed at her in front of the entire team for raising legitimate concerns about Salesforce tracking.

75.     On May 15, 2019, during a trade show in Las Vegas, Driscoll accused Tosi and several of her colleagues on the Account Executive team of not being "team players."

76.     Driscoll became irate and abusive when the team declined to go out drinking with her after a work dinner. Driscoll verbally harassed Tosi's colleagues, Carol Nicolai and Julie Rask. Driscoll screamed and pointed her finger in Ms. Nicolai's face, calling the team "mean girls." Driscoll said she was "disgusted" with

14

the team's behavior and threatened to "fact check" their emails because the female employees did not go along with Driscoll's inappropriate workplace behavior.

77.     Toward the end of the trade show, Driscoll instructed the entire Account Executive team to leave the HD Expo Trade Show booth and accompany her and Ryan Haggett (the younger male who had been hired as East Coast Sales Director instead of Tosi) to go out drinking. Tosi and her colleagues expressed concern about leaving the trade show booth empty with no sales support.

78.     Driscoll dismissed the team's concerns, stating that it was fine to leave early, she was the boss, and no one would be looking for them. After Driscoll demanded that the team go out drinking with her, Tosi felt pressured to join her.

79.     In June of 2019, Tosi was still covering the Southeast territory as well as her Northeast territory.

80.     Tosi had a weekly "touch base" phone call on June 24, 2019 with Ryan Haggett ("Haggett"), the Eastern US Sales Director. Haggett said that he was close to filling the Southeast territory with a new hire. Tosi emailed him to check on what the plan was for her territories and compensation going forward.

81.     Haggett said he wanted to meet to discuss a "game plan for maximizing" Tosi's territory going forward. Tosi responded that she was disappointed to be losing the Southeast territory without a plan to replace lost sales potential.

82.     Tosi told Haggett that she would be demoted from managing a territory with almost $50 million in sales to just under $17 million in sales, which was the opposite of career growth.

15

83.     Haggett claimed that Tosi would still have strong earning potential with accounts like the Cardy Group and Starwood Capital. Tosi had to explain to him that she did not get credit for these sales.

84.     Tosi was facing a significant reduction in pay in 2019. WSI then instructed her to stop contacting The Cardy Group, one of her accounts, because Haggett would be managing their account going forward. The Cardy Group is a close friend and business contact of Driscoll's. Earlier in 2019, items did not ship according to schedule and Driscoll blamed the issue on Tosi, even though she was on vacation at the time and her job did not involve managing shipping for any accounts.

85.     On October 4, 2019, Tosi had a mid-year review with Haggett. He gave Tosi a set of business objectives to achieve over the next 3 months and presented her with a new bonus plan. Tosi asked for clarification on the new bonus plan and Haggett reprimanded her for asking questions.

86.     Soon after, the team's sales goals were increased but no one told them about it at first. Tosi participated in a weekly team sales call meeting, during which Driscoll said the increase was insignificant and we should "move on" and not focus on the increased goal. However, Tosi's goal increased by $2.5 million.

87.     On October 18, 2019, Tosi asked Haggett for help understanding the new bonus plan. She also asked why she was the only Account Executive on the team who did not receive an increase in base salary that year. All other Account Executives received a salary increase just the week before (in October 2019) and they had also received merit raises in April.

88.     Haggett sent back a harsh email telling Tosi that it was "neither professional nor appropriate to discuss compensation in this manner," and said he had been in touch with HR. Tosi found his email to be threatening and retaliatory, as well as discrimination based on gender for Tosi advocating for equal pay.

89.     Less than two weeks later, WSI presented Tosi with a Performance Improvement Plan ("PIP"). Haggett was supposed to discuss the PIP with Tosi by phone the first week of November, but he never reached out to her.

90.     Any criticism of Tosi's performance was pure pretext and unwarranted. By the first day of Q4 (November 4, 2019), Tosi was the only Account Executive who had already surpassed 100% of her sales goal. By January 13, 2020, Tosi was at 114% of her sales goal.

91.     During a team call on November 20, 2019 with nine other Account Executives, Haggett screamed at Tosi in a hostile manner and said he was "getting pretty frustrated with you." After the call, two colleagues followed up with Tosi and said she should call HR and file a formal complaint against Haggett for the inappropriate and hostile verbal attack. Tosi's colleagues acknowledged that Haggett was falsely blaming Tosi for something that she did not do.

92.     On November 25, 2019, Tosi had a call with Nicole Mighty ("Mighty") in HR, as well as Haggett, to go over the false and pretextual PIP.

93.     The performance issues identified in the PIP accused Tosi of ineffective client management, which she demonstrated was untrue. Mighty agreed with Tosi and said she would change the errors in the PIP about her interactions with clients.

The remainder of the PIP criticized Tosi for complaining to management about retaliation.

94.     On November 26, 2019, Tosi received a call from Haggett stating that WSI had filled the Southeast territory and her salary would be reduced beginning on January 20, 2020. Haggett instructed Tosi to get the Southeast territories and pipeline in order so she could work with the new hire to hand over all projects.

95.     Tosi was so emotionally distraught from the above events and being falsely accused of poor performance that she began suffering extreme anxiety and had to start taking anti-anxiety medication. She went out of work on a mental stress and anxiety-related FMLA leave in December of 2019.

96.     When Tosi returned from FMLA leave in January of 2020, Haggett treated her in a retaliatory manner by trying to prevent Tosi from contacting one of her clients. Haggett sent Tosi emails that contained more false accusations. By January of 2020, it was clear that WSI was trying to force Tosi out of the company.

97.     Tosi's salary was also reduced in January of 2020 and WSI had drastically reduced her territory and earning potential. Tosi asked WSI to rescind the false PIP, and they refused.

98.     WSI constructively discharged Tosi from employment effective January 15, 2020 by making it intolerable for her to continue working at WSI for reduced pay and earning potential, as well as by subjecting her to a continuously hostile and abusive working environment that no objectively reasonable person could tolerate.

99.    WSI's conduct became so intolerable that any reasonable person would have felt compelled to resign by January 15, 2020.

100.    WSI discriminated against Tosi based on her gender, sexually harassed her by engaging in quid pro quo harassment, subjected her to a hostile work environment, engaged in age discrimination, retaliated against her on the basis of sex and exercising her rights under the FMLA, and also retaliated against Tosi for complaining about unfair pay practices. All of the foregoing instances of discrimination and retaliation were willful, knowing acts by WSI, thereby entitling Tosi to punitive and/or liquidated damages.

## FIRST CAUSE OF ACTION

## SEX-BASED DISCRIMINATION
### (Title VII, 42 U.S.C. § 2000e-3)

101.    Plaintiff repeats the allegations contained in Paragraphs 1 through 100 as if fully stated herein.

102.    Tosi is a member of a protected class based on her gender.

103.    Title VII makes it illegal for an employer to discriminate against an employee on the basis of gender in compensation or in terms, conditions, or privileges of employment.

104.    Defendant's action described above amount to disparate and/or less favorable treatment of Tosi and discriminatory intent on the part of WSI, in violation of Title VII.

105.    WSI treated Tosi less favorably than her similarly situated male colleagues.

106.    Defendant's actions described above amount to sex discrimination in violation of Title VII, because WSI subjected Tosi to unfair and discriminatory pay practices, and failed to promote, fairly compensate, or retain her in employment for discriminatory reasons based on her gender.

107.    As a result of Defendant's sex discrimination and willful violation of Title VII, Tosi has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Nicole Tosi requests that the Court award her damages for Defendant's violation(s) of Title VII in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## SECOND CAUSE OF ACTION

### SEX-BASED DISCRIMINATION
### (NYCHRL, Chapter 5, § 8-502)

108.    Plaintiff repeats the allegations contained in Paragraphs 1 through 107 as if fully stated herein.

109.    Tosi is a member of a protected class based on her gender.

110.    Chapter 1, § 8-107(1)(a) of the NYCHRL makes it illegal for an employer to discriminate against an employee on the basis of gender in compensation or in terms, conditions, or privileges of employment.

111.   Defendant's action described above amount to disparate and/or less favorable treatment of Tosi and discriminatory intent on the part of WSI, in violation of the NYCHRL.

112.   WSI treated Tosi less favorably than her similarly situated male colleagues.

113.   Defendant's actions described above amount to sex discrimination in violation of the NYCHRL, because WSI subjected Tosi to unfair and discriminatory pay practices, and failed to promote, fairly compensate, or retain her in employment for discriminatory reasons based on her gender.

114.   As a result of Defendant's sex discrimination and willful violation of the NYCHRL, Tosi has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Nicole Tosi requests that the Court award her damages for Defendant's violation(s) of the NYCHRL in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## THIRD CAUSE OF ACTION

### SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT
**(Title VII, 42 U.S.C. § 2000e-3)**

115.   Plaintiff repeats the allegations contained in Paragraphs 1 through 114 as if fully stated herein.

116.   Title VII prohibits the creation of a hostile work environment based on sexual harassment.

117.   The sexual harassment Tosi experienced at WSI was objectively severe or pervasive, such that a reasonable person would find the work environment hostile or abusive.

118.   The sexual harassment described above created an environment that Plaintiff subjectively perceived as hostile or abusive.

119.   The hostile and abusive work environment described above was created because of Plaintiff's sex.

120.   A single incident or occurrence of sexual harassment can create a hostile work environment if sufficiently severe and pervasive.

121.   WSI knew or should have known that the actions described above created a hostile work environment for Tosi and others, but WSI failed to take prompt and reasonable remedial action to remedy the hostile environment in violation of Title VII.

122.   WSI's sexual harassment of Tosi based on a hostile work environment resulted in her constructive discharge from employment on about January 15, 2020.

123.   As a result of WSI's sexual harassment based on a hostile work environment, which constituted a willful violation of Title VII, Tosi has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Nicole Tosi requests that the Court award her damages for Defendant's violation(s) of Title VII in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## FOURTH CAUSE OF ACTION

## SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT
(NYCHRL, Chapter 5, § 8-502)

124.    Plaintiff repeats the allegations contained in Paragraphs 1 through 123 as if fully stated herein.

125.    The NYCHRL prohibits the creation of a hostile work environment based on sexual harassment.

126.    The sexual harassment Tosi experienced at WSI was objectively severe or pervasive, such that a reasonable person would find the work environment hostile or abusive.

127.    The sexual harassment described above created an environment that Plaintiff subjectively perceived as hostile or abusive.

128.    The hostile and abusive work environment described above was created because of Plaintiff's sex.

129.    A single incident or occurrence of sexual harassment can create a hostile work environment if sufficiently severe and pervasive.

130.    WSI knew or should have known that the actions described above created a hostile work environment for Tosi and others, but WSI failed to take prompt

23

and reasonable remedial action to remedy the hostile environment in violation of the NYCHRL.

131.   WSI's sexual harassment of Tosi based on a hostile work environment resulted in her constructive discharge from employment on about January 15, 2020.

132.   As a result of WSI's sexual harassment based on a hostile work environment, which constituted a willful violation of the NYCHRL, Tosi has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Nicole Tosi requests that the Court award her damages for Defendant's violation(s) of the NYCHRL in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

### FIFTH CAUSE OF ACTION

### QUID PRO QUO SEXUAL HARASSMENT
### (Title VII, 42 U.S.C. § 2000e-3)

133.   Plaintiff repeats the allegations contained in Paragraphs 1 through 132 as if fully stated herein.

134.   Title VII prohibits quid pro quo sexual harassment.

135.   WSI engaged in a continuing pattern of quid pro quo sexual harassment of women dating all the way back to Huettmann's demands that Tosi and her colleagues wear high heels and red lipstick at trade shows, and continuing through

24

Driscoll's demands that Tosi and her colleagues go out drinking and engage in inappropriate behavior, or otherwise be deemed "mean girls."

136.   Huettmann had the authority to affect the terms, conditions, benefits, and privileges of Tosi's employment.

137.   Tosi's rejection of Huettmann's sexually harassing conduct had a negative impact on the terms, conditions, benefits, and privileges of her employment.

138.   Driscoll also engaged in quid pro quo sexual harassment of Tosi as a supervisory employee with authority over Tosi.

139.   The adverse actions that Tosi faced throughout 2018 and 2019 were the direct result of quid pro quo sexual harassment, because she complained of sexual harassment on multiple occasions to WSI instead of going along with the harassment and acquiescing to Huettmann's sexually inappropriate behavior and later Driscoll's sexually discriminatory behavior.

140.   Tosi continued to raise issues of sexual harassment and sex-based discrimination with HR in August and October of 2018, as well as April of 2019. WSI engaged in quid pro quo sexual harassment on each of these dates because instead of correcting the sexual harassment, WSI punished Tosi for not going along with Huettmann and Driscoll's abusive behavior.

141.   As a result of WSI's quid pro quo sexual harassment of Tosi, which constituted a willful violation of Title VII, Tosi has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay,

compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Nicole Tosi requests that the Court award her damages for Defendant's violation(s) of Title VII in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## SIXTH CAUSE OF ACTION

## <u>QUID PRO QUO SEXUAL HARASSMENT</u>
### (NYCHRL, Chapter 5, § 8-502)

142.   Plaintiff repeats the allegations contained in Paragraphs 1 through 141 as if fully stated herein.

143.   The NYCHRL prohibits quid pro quo sexual harassment.

144.   WSI engaged in a continuing pattern of quid pro quo sexual harassment of women dating all the way back to Huettmann's demands that Tosi and her colleagues wear high heels and red lipstick at trade shows, and continuing through Driscoll's demands that Tosi and her colleagues go out drinking and engage in inappropriate behavior, or otherwise be deemed "mean girls."

145.   Huettmann had the authority to affect the terms, conditions, benefits, and privileges of Tosi's employment.

146.   Tosi's rejection of Huettmann's sexually harassing conduct had a negative impact on the terms, conditions, benefits, and privileges of her employment.

147. Driscoll also engaged in quid pro quo sexual harassment of Tosi as a supervisory employee with authority over Tosi.

148. The adverse actions that Tosi faced throughout 2018 and 2019 were the direct result of quid pro quo sexual harassment, because she complained of sexual harassment on multiple occasions to WSI instead of going along with the harassment and acquiescing to Huettmann's sexually inappropriate behavior and later Driscoll's sexually discriminatory behavior.

149. Tosi continued to raise issues of sexual harassment and sex-based discrimination with HR in August and October of 2018, as well as April of 2019. WSI engaged in quid pro quo sexual harassment on each of these dates because instead of correcting the sexual harassment, WSI punished Tosi for not going along with Huettmann and Driscoll's abusive behavior.

150. As a result of WSI's quid pro quo sexual harassment of Tosi, which constituted a willful violation of the NYCHRL, Tosi has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Nicole Tosi requests that the Court award her damages for Defendant's violation(s) of the NYCHRL in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## SEVENTH CAUSE OF ACTION

## <u>RETALIATION FOR OPPOSING A PRACTICE</u>
### (Title VII, 42 U.S.C. § 2000e-3)

151.   Plaintiff repeats the allegations contained in Paragraphs 1 through 150 as if fully stated herein.

152.   Under Title VII, it shall be an unlawful discriminatory practice to retaliate against any person who has opposed a practice forbidden by Title VII.

153.   Tosi engaged in protected conduct under Title VII by opposing WSI's sexual harassment of her on multiple occasions between 2016 and 2020.

154.   Because she opposed a practice or practices made unlawful by Title VII, Tosi suffered adverse action with respect to her employment and material changes in the terms and conditions of her employment.

155.   The retaliation that Tosi faced for opposing a practice made unlawful by Title VII was reasonably likely to deter another WSI employee from engaging in protected activity, in violation of law.

156.   Given the frequency of her complaints to HR about unlawful sexual harassment and disparate treatment, WSI's conduct in retaliating against Tosi was willful and intentional.

157.   As a result of WSI's willful retaliation in violation of Title VII, Tosi has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Nicole Tosi requests that the Court award her damages for Defendant's violation(s) of Title VII in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## EIGHTH CAUSE OF ACTION

### RETALIATION FOR OPPOSING A PRACTICE
### (NYCHRL, Chapter 5, § 8-502)

158.    Plaintiff repeats the allegations contained in Paragraphs 1 through 157 as if fully stated herein.

159.    Under the NYCHRL, it shall be an unlawful discriminatory practice to retaliate against any person who has opposed a practice forbidden by Chapter 1.

160.    Tosi engaged in protected conduct under the NYCHRL by opposing WSI's sexual harassment of her on multiple occasions between 2016 and 2020.

161.    Because she opposed a practice or practices made unlawful by the NYCHRL, Tosi suffered adverse action with respect to her employment and material changes in the terms and conditions of her employment.

162.    The retaliation that Tosi faced for opposing a practice made unlawful by the NYCHRL was reasonably likely to deter another WSI employee from engaging in protected activity, in violation of law.

163.    Given the frequency of her complaints to HR about unlawful sexual harassment and disparate treatment, WSI's conduct in retaliating against Tosi was willful and intentional.

164.    As a result of WSI's willful retaliation in violation of the NYCHRL, Tosi has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Nicole Tosi requests that the Court award her damages for Defendant's violation(s) of the NYCHRL in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## NINTH CAUSE OF ACTION

### <u>AGE DISCRIMINATION</u>
**(ADEA, 29 U.S.C. § 623)**

165.    Plaintiff repeats the allegations contained in Paragraphs 1 through 164 as if fully stated herein.

166.    Tosi is a member of a protected class based on her age.

167.    The ADEA makes it illegal for an employer to discriminate against an employee on the basis of age in compensation or in terms, conditions, or privileges of employment.

168.    Defendant's action described above amount to age discrimination in violation of the ADEA, because WSI subjected Tosi to unfair and discriminatory pay practices, disparate treatment, and failed to promote, fairly compensate, or retain her in employment for discriminatory reasons based on her age.

169.   WSI hired and/or promoted younger male employees for positions that Tosi was qualified to perform, and in fact had been promised would be offered to her.

170.   WSI was aware that Tosi had been promised promotions and director-level positions within the company from the time she started at WSI.

171.   When the opportunity arose to promote Tosi, WSI chose to hire a younger employee instead, suggesting age-related bias. When Tosi complained about being passed over for a promotion, WSI took no action to remedy age discrimination but instead retaliated against Tosi.

172.   WSI constructively discharged Tosi from employment, failed to promote her, demoted her, took away her salary and reduced her sales territory, and/or gave her a false and pretextual negative performance evaluation and PIP, all because of her advanced age.

173.   As a result of Defendant's age discrimination and willful violation of the ADEA, Tosi has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Nicole Tosi requests that the Court award her damages for Defendant's violation(s) of the ADEA in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## TENTH CAUSE OF ACTION

## <u>AGE DISCRIMINATION</u>
### (NYCHRL, Chapter 5, § 8-502)

174.    Plaintiff repeats the allegations contained in Paragraphs 1 through 173 as if fully stated herein.

175.    Tosi is a member of a protected class based on her age.

176.    Chapter 1, § 8-107(1)(a) of the NYCHRL makes it illegal for an employer to discriminate against an employee on the basis of age in compensation or in terms, conditions, or privileges of employment.

177.    Defendant's action described above amount to age discrimination in violation of the NYCHRL, because WSI subjected Tosi to unfair and discriminatory pay practices, disparate treatment, and failed to promote, fairly compensate, or retain her in employment for discriminatory reasons based on her age.

178.    WSI hired and/or promoted younger male employees for positions that Tosi was qualified to perform, and in fact had been promised would be offered to her.

179.    WSI was aware that Tosi had been promised promotions and director-level positions within the company from the time she started at WSI.

180.    When the opportunity arose to promote Tosi, WSI chose to hire a younger employee instead, suggesting age-related bias. When Tosi complained about being passed over for a promotion, WSI took no action to remedy age discrimination but instead retaliated against Tosi.

181.    WSI constructively discharged Tosi from employment, failed to promote her, demoted her, took away her salary and reduced her sales territory, and/or gave

her a false and pretextual negative performance evaluation and PIP, all because of her advanced age.

182.    As a result of Defendant's age discrimination and willful violation of the NYCHRL, Tosi has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Nicole Tosi requests that the Court award her damages for Defendant's violation(s) of the NYCHRL in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

**ELEVENTH CAUSE OF ACTION**

**<u>FMLA RETALIATION</u>**
**(29 U.S.C. § 2615(a)(2))**

183.    Plaintiff repeats the allegations contained in Paragraphs 1 through 182 as if fully stated herein.

184.    In addition to the allegations set forth above, WSI retaliated against Tosi for taking FMLA-protected leave for her own serious health condition.

185.    At all times herein relevant, Tosi was eligible and qualified for leave under the FMLA.

186.    Tosi put WSI on notice of her need for FMLA leave and took a leave of absence in late 2019 and early 2020 for her own serious health condition.

187.   Upon information and belief, WSI violated the Federal regulations implementing the FMLA by failing to follow proper procedures for providing notice, designation, or requesting certification for FMLA leave.

188.   WSI retaliated against Tosi for exercising her rights under the FMLA by reducing her salary and territory, interfering with customer relationships, placing her on a bogus PIP, and otherwise subjecting her to adverse action upon her return from FMLA leave.

189.   Tosi suffered adverse action for exercising her rights under the FMLA.

190.   Tosi's exercise of her rights under the FMLA bear a causal connection to the adverse employment actions described herein.

191.   When Tosi returned from protected FMLA leave, she faced unfair criticism, disparate treatment compared to her coworkers, a reduced sales territory, false and pretextual performance evaluations designed to force her out of the company, and a reduction in salary.

192.   As a result of Defendant's FMLA retaliation, Tosi has suffered and is entitled to damages, including but not limited to lost wages and benefits, front pay, attorney's fees, costs, and expenses.

193.   Defendant's violation of the FMLA was willful, justifying an award of liquidated damages under the FMLA and extending the statute of limitations from 2 to 3 years.

WHEREFORE, Plaintiff Nicole Tosi requests that the Court award her damages for Defendant's violation of the FMLA in the form of lost back pay, front

34

pay, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

**TWELFTH CAUSE OF ACTION**

**UNPAID WAGES**
**(NY Labor Law, Article 6)**

194.    Plaintiff repeats the allegations contained in Paragraphs 1 through 193 as if fully stated herein.

195.    WSI, as Tosi's employer, failed to pay Tosi wages as that term is defined under the New York Labor Law ("NYLL"), Article 6, § 190, including sales commissions due to her.

196.    Under the NYLL, Article 6, § 191(c), sales representatives paid commission are to be paid in accordance with the agreed terms of employment, on a timeline set forth by statute.

197.    WSI and/or its subsidiaries entered into contractual sales agreements and incentive plans with Tosi in the years 2016, 2017, 2018, and 2019.

198.    Upon information and belief, WSI failed to pay Tosi all contractual wages due to her under the various plans set forth above.

199.    Under section 198 of the NYLL, Tosi is entitled to three hundred times the amount of her unpaid wages for WSI's willful violation of the NYLL.

WHEREFORE, Plaintiff Nicole Tosi requests that the Court award her damages for Defendant's violation of the New York Labor Law, Article 6, in the form of lost wages, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## THIRTEENTH CAUSE OF ACTION

## <u>RETALIATION IN VIOLATION OF WAGE LAW</u>
### (N.Y. Labor Law § 215.1(a))

200.    Plaintiff repeats the allegations contained in Paragraphs 1 through 199 as if fully stated herein.

201.    The NY Labor Law ("NYLL") § 215.1(a) prohibits employers from discharging employees who complain about unpaid wages or violations of the NYLL.

202.    The NYLL enables an employee who proves a violation of the anti-retaliation provision to obtain "all appropriate relief," including damages for lost compensation.

203.    Both before and after 2016, Tosi engaged in protected activity under the anti-retaliation provision of the NYLL on numerous occasions, all of which WSI knew about.

204.    Tosi suffered adverse employment actions disadvantaging her in the terms, conditions, benefits, and privileges of her employment, up to and including constructive discharge from employment.

205.    A causal connection between the protected activity and the adverse employment action existed based on timing of the above-described events, lack of payment for sales commissions, and ongoing hostility toward or harassment of Tosi for continuing to complain about unpaid wages.

206.    WSI is unable to articulate a legitimate, non-discriminatory reasons for the many adverse actions the company took against Tosi.

207.   Any reasons offered by WSI for the many adverse actions it took against Tosi between 2016 and 2020 were false and pretextual, with the real reason for the adverse actions being retaliation for complaining about unpaid wages.

WHEREFORE, Plaintiff Nicole Tosi requests that the Court award her damages for Defendant's violation of the New York Labor Law in the form of lost back pay, front pay, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## FOURTEENTH CAUSE OF ACTION

## BREACH OF CONTRACT

208.   Plaintiff repeats the allegations contained in Paragraphs 1 through 207 as if fully stated herein.

209.   Tosi entered into sales contracts, compensation plans, and/or employment agreements with WSI, with mutual assent to be bound based on Tosi's continued employment and performance under those contracts, plans, and/or agreements.

210.   WSI breached its contractual obligations to Tosi by failing to pay her wages due under the various sales contracts, compensation plans, and/or employment agreements described above.

211.   As a result of WSI's breach of contract, Tosi has sustained damages in the form of economic loss and unpaid wages, together with consequential damages.

WHEREFORE, Plaintiff Nicole Tosi requests that the Court award her damages for Defendant's breach of contract in the form of compensatory and economic

damages, consequential damages for breach, equitable and injunctive relief, and all other relief afforded to her by law.

### **JURY TRIAL DEMAND**

Plaintiff Nicole Tosi hereby demands a jury trial on all matters so triable under the laws and Constitution of the United States and the State of New York.

Dated: July 15, 2022                    */s/ Laura H. White*

_____

Laura H. White, Bar No. 4025
*Attorney for Plaintiff*
WHITE & QUINLAN, LLC
62 Portland Rd., Suite 21
Kennebunk, ME 04043
(207) 502-7484
*lwhite@whiteandquinlan.com*